IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**

**AJIT TRIKHA, and**
**TRX HEALTH SYSTEMS, P.C.,**

    **Defendants.**                                 **Case No. 06-CR-30098-DRH**

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION

This matter is before the Court on Defendants' Amended Motion to Declare 18 U.S.C. 1374; 18 U.S.C. 1341 and 2; 18 U.S.C. 982(a)(7); 18 U.S.C. 981(a)(1)(c); and 28 U.S.C. 2461 Unconstitutionally Vague as Applied to Defendants and to Dismiss the Indictment (Doc. 55). The issues, having been fully briefed by the parties, are now ripe for determination.

### II. BACKGROUND

Defendant Ajit Trikha ("Trikha") is a psychiatrist practicing within the Southern District of Illinois (Doc. 28, ¶ 1). Trikha incorporated TRX Health Systems, P.C. ("TRX"), his codefendant in this case, as an Illinois corporate entity on June 1, 2000 (*Id.* at ¶ 2). Trikha is the President, Secretary and Treasurer of TRX (*Id.*). Thereafter, on March 5, 2001, Trikha changed his provider payee information

to "TRX Health Systems, P.C." (Doc. 28, ¶ 10). In a Superseding Indictment, issued on October 20, 2006 (Doc. 28), defendants Trikha and TRX (collectively "Defendants") were charged with two counts (Counts 1 and 2, Doc. 28, ¶¶ 16-17 and 18-19) of health care fraud in violation of **18 U.S.C. § 1347**[1] and one count (Count 3, Doc. 28, ¶¶ 20-22) of mail fraud in violation of **18 U.S.C. §§ 1341 & 1342**.[2]

---

[1] **18 U.S.C. § 1347**, regarding health care fraud, states:

Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice--

(1) to defraud any health care benefit program; or
(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,

in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both. If the violation results in serious bodily injury (as defined in section 1365 of this title), such person shall be fined under this title or imprisoned not more than 20 years, or both; and if the violation results in death, such person shall be fined under this title, or imprisoned for any term of years or for life, or both.

[2] **18 U.S.C. § 1341**, regarding mail fraud, states:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this titleor imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

(cont'd on next page)

Lastly, Count 4 seeks forfeiture of Defendants' property, real and personal, to the Government "from gross proceeds traceable to the commission of said offenses" in the amounts of at least $2,430,768.93 and $10,911.15 (*Id.* at pp. 8-9).

Simply stated, Defendants have been charged with submitting false provider billing claims to both Medicare and Medicaid in order to collect payments they were not entitled to receive. Pursuant to the Superseding Indictment, both Medicare and Medicaid require provider billing claims to include Current Procedural Terminology ("CPT") codes to identify the service performed by the provider. These CPT codes are established by the American Medical Association (Doc. 28, ¶ 11).

The Government charges Defendants with falsely billing for the following services:

(1)  CPT code 90807 - Individual psychotherapy, insight oriented, behavior modifying and/or supportive, in the office or outpatient facility, requires of approximately 45 to 50 minutes face-to-face with the patient; with medical evaluation and management services.

Regarding CPT code 90807, the Government charges Defendants for billing both Medicare and Medicaid for this code when Trikha "spent little or no time with the

---

(cont'd from previous page)

**18 U.S.C. § 1342**, also regarding mail fraud, states:

Whoever, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341 of this title or any other unlawful business, uses or assumes, or requests to be addressed by, any fictitious, false, or assumed title, name, or address or name other than his own proper name, or takes or receives from any post office or authorized depository of mail matter, any letter, postal card, package, or other mail matter addressed to any such fictitious, false, or assumed title, name, or address, or name other than his own proper name, shall be fined under this title or imprisoned not more than five years, or both.

patient" and Defendants also billed for individual psychotherapy services during the time that Trikha was actually out of the country (*Id.* at ¶ 12).

> (2) <u>CPT code 90853</u> - Group psychotherapy (other than of a multiple-family group) by a physician, with continuing medical diagnostic evaluation and drug management when indicated.

The Medicare Carrier for Illinois, Wisconsin Physician Services, also requires that "the group size should be of a size that can be successfully led (*i.e.*, maximum of 12 people)" when submitting a CPT code 90853 billing claim to Medicare. The Government states that Defendants regularly billed Medicare for CPT code 90853 "when the group size far exceeded 12 people" and Defendants also billed for group therapy services during the time that Trikha was actually out of the country (*Id.* at ¶ 13).

> (3) <u>CPT code 90862</u> - Pharmacologic management, including prescription, use, and review of medication with no more than minimal medical psychotherapy.

The Government, in regards to CPT code 90862, states that Defendants billed both Medicare and Medicaid for this code "without meeting with the patient, claiming an in-office visit when the patient was not present," and again, Defendants also billed for in-office pharmacologic services during the time that Trikha was actually out of the country (*Id.* at ¶ 14).

> (4) <u>CPT code 90817</u> - Individual psychotherapy, insight oriented, behavior modifying and/or supportive, in an inpatient hospital, partial hospital or residential care setting, approximately 20 to 30 minutes face-to-face with the patient; with medical evaluation and management services.

and

> <u>CPT code 90819</u> - Individual psychotherapy, insight oriented, behavior modifying and/or supportive, in an inpatient hospital, partial hospital or residential care setting, approximately 45 to 50 minutes face-to-face with the patient; with medical evaluation and management services.

The Government also charges Defendants for billing both Medicare and Medicaid for CPT codes 90817 and 90819 when Trikha spent "little or no time with the patient" instead of either approximately 20 to 30 minutes as required by CPT code 90817 or approximately 45 to 50 minutes as required by CPT code 90819. Further, the Government states that Defendants submitted these billing claims "for visits with patients who were not able to communicate verbally at all" (*Id*. at ¶ 15).

Defendants now advance the argument that the Superseding Indictment should be dismissed for being unconstitutionally vague as applied to them (Doc. 55). For the following reasons, Defendants' Motion must be denied.

### III. <u>DISCUSSION</u>

**A.    Legal Standard**

    **1.    Rule 12(b) Pretrial Motion**

Defendants' Motion to Dismiss is made pursuant to **FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(2)**, which allows a party to raise "any defense, objection, or request that the court can determine without a trial" in a pretrial motion. This includes a pretrial motion claiming a defect in the indictment. **FED. R. CRIM. P. 12(b)(3)(B)**. With their Motion, Defendants are not disputing the constitutionality of the statutes on their face. Instead, what is brought into question is the constitutionality of these statutes as they are applied to Defendants in particular, via

the Superseding Indictment. Thus, the Court looks at whether the Superseding Indictment, when coupled with the factual allegations of this matter, vitiates the charging statutes, making them unconstitutional.

Under **FEDERAL RULE OF CRIMINAL PROCEDURE 7(c)(1)**, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment will be found sufficient if it (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend" and (2) "enables [a defendant] to plead an acquittal or conviction in bar of future prosecutions for the same offense." ***United States v. Moore*, 446 F.3d 671, 676-77 (7th Cir. 2006)(quoting *United States v. Webster*, 125 F.3d 1024, 1029 (7th Cir.1997))(internal citation omitted)**. When the validity of an indictment is challenged by a defendant, the reviewing court must view all facts in the light most favorable to the government. ***United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999)**. The Court should also conduct a practical review of the challenged indictment "in [its] entirety, rather than 'in a hypertechnical manner.'" ***United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)(quoting *United States v. McNeese*, 901 F.2d 585, 602 (7th Cir.1990))**.

2. **Vagueness Doctrine**

Due process requires that a penal statute be sufficiently definite to give notice to a person of ordinary intelligence of the prohibited conduct, in order for that person to conform his or her conduct within the proscribed legal confines.

*Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Therefore, one may challenge the constitutionality of a penal statute based upon the argument that the statute is vague, as the "[vagueness] doctrine incorporates notions of fair notice or warning." *Smith v. Goguen*, 415 U.S. 566, 572-73 (1974). "Vagueness challenges that do not involve First Amendment freedoms must be analyzed as applied to the specific facts of the case at hand." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *United States v. Lim*, 444 F.3d 910, 915 (7th Cir. 2006)(citing *United States v. Mazurie*, 419 U.S. 544, 550 (1975)).

A penal statute may be void for vagueness "for either of two independent reasons." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). First, a statute may be unconstitutionally vague if it "fails to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." *Id.* (citing *Kolender*, 461 U.S. at 357). A statute may also be unconstitutionally vague if it "fails to provide explicit standards to prevent arbitrary and discriminatory enforcement by those enforcing the statute." *Lim*, 444 F.3d at 915 (citing *Karlin v. Foust*, 188 F.3d 446, 458-59 (7th Cir. 1999)). As observed by the United States Supreme Court, the requirement that a penal statute provide minimal guidelines in order to discourage arbitrary enforcement is "perhaps the most meaningful aspect of the vagueness doctrine." *Smith*, 415 U.S. at 574. Without these minimal enforcement guidelines provided within a statute,"policemen, prosecutors, and juries [are allowed] to pursue their personal predilections." *Id.* at

575.

**B.     Analysis**

The crux of Defendants' vagueness argument concerns the application of the CPT codes to the facts of this case.  Defendants contend that the CPT codes themselves are vague and therefore fail to provide adequate guidance so that a provider may determine whether using certain CPT codes when billing for services rendered is proper or fraudulent.  For example, CPT code 90817 is a billing code the provider is advised to use when an individual psychotherapy session is conducted in a nursing home facility, when the provider spends "approximately 20 to 30 minutes face to face" with the patient.  Defendants believe the CPT code's use of the term "approximately" is vague; they question what the provider should do if he or she only spends 18 or 19 minutes with a patient?  Would that provider then be guilty of fraudulent billing if CPT code 90817 were used as the billing code?  Also part of their argument is the asserted vagueness of CPT code 90853, which is to be used as a billing code for group psychotherapy sessions by a physician, the requirement that "the group size should be of a size that can be successfully led (*i.e.*, maximum of 12 people)."  Defendants pose the hypothetical of whether a group session could be "successfully led" if there were 13 people instead of 12 in the group.  Would using CPT code 90853 in that situation be considered fraudulent?  Defendants further challenge CPT code 90807 (which advises the duration of an individual psychotherapy session), asking "if all the goals of an individual psychotherapy session are accomplished in a 30 minute time frame, must the medical provider stay

in the room and 'stare at the walls' to fulfill the admonishment that the time spent with the patient should be 45 minutes?" (Doc. 55, p. 8).

These questions posed by Defendants support their assertion that the vagueness of the CPT codes make it "simply impossible for a medical professional to determine what conduct can be considered criminal in nature" (*Id*.). However, Defendants' hypotheticals do not accurately portray the allegations in the Superseding Indictment. For instance, Defendants are charged with billing for CPT code 90807 (individual psychotherapy . . . approximately 45 to 50 minutes face-to-face with the patient), when Trikha "spent little or no time with the patient . . . and also billed for in-office psychotherapy services when [he] had traveled outside the United States" (Doc. 28, ¶ 12). This is a far cry from a situation where the session was 35 minutes. In other words, a rational person would not consider using this CPT code for a session lasting "approximately 45 to 50 minutes" when that physician had actually spent "little or no time" with the patient. To do so would definitely put the physician on notice that such an egregious billing would be considered fraudulent. The same holds true for the CPT codes 90817 and 90819 that also require an "approximate" amount of time spent with the patient. The Superseding Indictment again charges Defendants with regularly billing these CPT codes when Trikha "spent little or no time with the patient" or billed "for visits with patients who were not able to communicate verbally at all" (*Id*. at ¶ 15). Again, as applied to these allegations, no rational physician would believe billing under these CPT codes would not likely amount to fraud.

Likewise, although Defendants assert that the phrase "minimal medical psychotherapy," as used in CPT code 90862, is vague, the Superseding Indictment charges Defendants for regularly billing this code "without meeting with the patient, claiming an in-office visit when the patient was not present" and billing "for in-office pharmacologic management services when [he] had traveled outside the United States" (*Id.* at ¶ 14). Clearly, the Court fails to see the shades of grey surrounding the use of "minimal" when there was absolutely *no* meeting with the patient.

Lastly, Defendants question the definition of the Illinois Medicare requirement that billing for CPT code 90853 (group psychotherapy) that "the group size should be of a size that can be successfully led (*i.e.*, maximum of 12 people), asserting it is also vague as applied. Again, however, the Superseding Indictment charges Defendants with regularly billing for that CPT code "when the group far exceeded 12 people" and also for times "when Trikha had traveled outside the United States" (*Id.* at ¶ 13). In reviewing the definition, the Court finds no ambiguity in the term "maximum," which is generally defined as "the upper limit allowed." **See Merriam-Webster's Online Dictionary, http://www.m-w.com/dictionary/maximum (last visited June 14, 2007)**. Common sense would dictate that a billing physician with a group "far exceed[ing] 12 people" should not bill under that particular CPT code, otherwise, it may be improper or fraudulent. In any case, it is not vague as applied to the allegations in the Superseding Indictment.

In sum, the Court finds the CPT codes are not ambiguous and vague as

applied to the allegations in this matter. The allegations charge Defendants with behavior that, if proven, clearly do not fall within the definitions for the CPT codes and thus, would provide adequate notice of criminal behavior. The Defendants are reminded that the Government is still required to prove both fraudulent intent in using these CPT codes and that these codes were also improper for the provided services (or for services that were never actually provided). Taking the Superseding Indictment at face value, the Court does not find that the allegations would give pause to any rational physician when determining whether such treatment was properly billable under the CPT codes at issue. In conclusion, the Superseding Indictment is not defective because the charging statutes are not found to be unconstitutionally vague as applied to Defendants.[3]

## IV. CONCLUSION

Defendants' Motion to Dismiss Superseding Indictment (Doc. 55) is hereby **DENIED**.

**IT IS SO ORDERED**.

Signed this 15th day of June, 2007.

/s/     David    RHerndon
**United States District Judge**

---

[3] Although Defendants have cited several cases from sister circuits and districts, the Court finds the analysis for this case to be relatively straightforward and so there is no need to discuss these other nonbinding opinions.